**KELLEY DRYE & WARREN LLP**
Michael J. Zinna (admitted *pro hac vice*)
Abhishek Bapna (admitted *pro hac vice*)
mzinna@kelleydrye.com
abapna@kelleydrye.com
One Jefferson Road
Parsippany, NJ 07054
Telephone: (973) 503-5964

**FENNEMORE CRAIG, P.C.**
William G. Klain
Zachary W. Rosenberg
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
(602) 916-5000
wklain@fennemorelaw.com
zrosenberg@fennemorelaw.com

*Attorneys for Plaintiff Extremity Medical, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Extremity Medical, LLC,<br><br>              Plaintiff,<br><br>     v.<br><br>Fusion Orthopedics, LLC,<br><br>              Defendant. | Case No.:  2:25-mc-00031-GMS<br><br>**EXTREMITY MEDICAL'S OPPOSITION TO FUSION ORTHOPEDIC USA, LLC'S MOTION TO QUASH SUBPOENA DUCES TECUM AND SUBPOENA TO TESTIFY** |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 3

      A.    The Infringement Lawsuit ................................................................................ 3

      B.    The Relationship Between Fusion and FUSA ................................................. 3

      C.    The Sales Spreadsheet ..................................................................................... 4

      D.    Fusion Has Not Provided Adequate Discovery Concerning FUSA ................ 4

III.  LEGAL STANDARD ................................................................................................. 5

IV.   ARGUMENT .............................................................................................................. 6

      A.    The Information Requested By the Subpoenas is Relevant and Necessary ............. 6

      B.    The Information Sought in the Subpoenas is Not Readily Available From Other
            Sources ........................................................................................................... 10

      C.    The Subpoenas Are Not Unduly Burdensome ............................................... 12

      D.    FUSA Failed to Comply With This Court's Local Rules and Procedures ............. 13

V.    CONCLUSION ......................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  692 F.3d 1301 (Fed. Cir. 2012), *rev'd on other grounds*, 572 U.S. 915 (2014) ....................... 8

*BMC Res., Inc. v. Paymentech, L.P.*,
  498 F.3d 1373 (Fed. Cir. 2007), *overruled on other grounds by Akamai Techs.,*
  *Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) ............................................ 8

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) .................................................................................................... 9

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
  886 F.2d 1545 (9th Cir. 1989) .................................................................................................. 9

*Hamilton v. Yavapai Cmty. Coll. Dist.*,
  No. 12-cv-08193, 2014 WL 11515631 (D. Ariz. Sept. 9, 2014) ............................................ 14

*Insituform Techs., Inc. v. CAT Contracting, Inc.*,
  385 F.3d 1360 (Fed. Cir. 2004) ................................................................................................ 9

*Jacobs Vehicle Sys., Inc. v. Pac. Diesel Brake Co.*,
  424 F. Supp. 2d 388 (D. Conn. 2006) ...................................................................................... 9

*MMI, Inc. v. Baja, Inc.*,
  743 F. Supp. 2d 1101 (D. Ariz. 2010) ...................................................................................... 9

*Mount Hope Church v. Bash Back!*,
  705 F.3d 418 (9th Cir. 2012) .................................................................................................... 5

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018) ................................................................................................ 8

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*,
  305 F.R.D. 630 (D. Or. 2015) ................................................................................................... 5

*TecSec, Inc. v. Adobe Inc.*,
  978 F.3d 1278 (Fed. Cir. 2020) ................................................................................................ 7

*Toranto v. Jaffurs*,
  No. 16-cv-1709, 2018 WL 9537310 (S.D. Cal. Nov. 29, 2018) ............................................ 12

*Wells Fargo Bank NA v. Wyo Tech Inv. Grp. LLC*,
  385 F. Supp. 3d 863 (D. Ariz. 2019) .................................................................................... 5, 6

*XimpleWare, Inc. v. Versata Software, Inc.*,
  No. 13-cv-05161, 2014 WL 2080850 (N.D. Cal. May 16, 2014)............................................. 7

*In re Yassai*,
  225 B.R. 478 (Bankr. C.D. Cal. 1998)................................................................. 5, 13

**Statutes**

35 U.S.C. § 271(b)............................................................................................. 6

**Other Authorities**

Fed. R. Civ. P. 26................................................................................................ 5, 6

Fed. R. Civ. P. 34................................................................................................ 5, 6

Fed. R. Civ. P. 45............................................................................................. 5, 6, 13

Plaintiff Extremity Medical, LLC ("XM" or "Plaintiff") hereby files its opposition to Fusion Orthopedics USA, LLC's ("FUSA") Motion to Quash the Subpoena to Produce Documents and Subpoena to Testify (Dkt. No. 1 (the "Motion" or "Mot.")) directed at FUSA from XM.

## I.    INTRODUCTION

This Motion arises out of a Subpoena Duces Tecum and a Subpoena to Testify (collectively, the "Subpoenas") issued to FUSA by XM in a patent infringement action brought by XM against Defendant Fusion Orthopedics, LLC ("Fusion") in May 2022. *See Extremity Medical, LLC v. Fusion Orthopedics, LLC*, Case No. 2:22-cv-00723-PHX-GMS (D. Ariz.) (the "Infringement Lawsuit").

On June 4, 2025, Fusion produced an updated sales spreadsheet (the "Sales Spreadsheet") that, for the first time, informed XM that FUSA has sold ▮▮▮▮▮▮ the infringing medical system, the IntraLock system.[1] (**Ex. 1** [excerpt of the Sales Spreadsheet].) This happened more than three years into the Infringement Lawsuit and less than two months before the deadline for the close of discovery.[2]

FUSA is a company that, at a minimum, has significant personnel overlap and a continuing business relationship with Fusion. The Sales Spreadsheet demonstrates that after the initiation of the Infringement Lawsuit in 2022, in a series of events that is not likely a coincidence, Fusion ceased selling the IntraLock system, which is at the heart of the Infringement Lawsuit. That same year, FUSA, with whom both of Fusion's co-founders are affiliated, for the first time, began selling the IntraLock system. In 2023, Fusion sold ▮▮▮▮▮▮▮▮▮▮▮▮▮. FUSA, on the other

---

[1] Further, it was not until the June 26, 2025 Rule 30(b)(6) deposition of Fusion that XM learned that Fusion may take the position in this litigation that it is not liable for any of FUSA's sales of the IntraLock system. And, because FUSA did not meet and confer with XM prior to the filing of the Motion, it was not until a meet and confer held on August 6, 2025 that XM was finally able to confirm that Fusion does, in fact, intend to argue that it is not liable for any of FUSA's sales of the IntraLock system.

[2] At the time, the deadline for the close of discovery was July 25, 2025.  Subsequently, the Court granted the parties' joint motion to extend the deadline to August 29, 2025.

hand, began selling the IntraLock system in 2022 and sold ████████████████████ ██ the IntraLock system in 2023, 2024, and 2025.

Faced for the first time with information that Fusion may have passed off its sales to a related company in a ploy to reduce its own liability as the defendant in the Infringement Lawsuit, XM was left with less than two months of discovery to uncover Fusion's role in FUSA's sale of the infringing IntraLock system. Accordingly, XM served targeted discovery to Fusion and the targeted Subpoenas to FUSA to discover: (i) how Fusion may have contributed to FUSA's sales of the IntraLock system, (ii) how Fusion may have controlled, directed, or otherwise influenced FUSA's sales of the IntraLock system, and (iii) the legal relationship between Fusion and FUSA. FUSA now seeks to prevent XM from obtaining this information.

FUSA's Motion to quash the Subpoenas is meritless and should be denied. As a threshold procedural matter, FUSA did not meet and confer with XM before filing the Motion; the Motion could be therefore be denied simply because FUSA did not respect this Court's protocol for discovery motions. Additionally, as set forth further below, XM's Subpoenas are narrowly tailored to obtain the information XM needs to support its claim that it is entitled to damages for every sale of the IntraLock system, whether it was Fusion that made the sale or FUSA. First, the information sought is relevant and necessary because the requested information is necessary to prove Fusion's liability for FUSA's infringing sales of the IntraLock system under one of at least three permissible theories: (i) induced infringement, (ii) direct infringement by virtue of Fusion's control and direction over FUSA's infringing activity, or (iii) alter ego. Each and every document request and each and every deposition topic noticed bears directly one of those theories, and is therefore relevant. Second, the information sought is unavailable from other sources, such as Fusion, because only FUSA knows whether or not FUSA would have, or could have, begun selling the IntraLock system without Fusion's influence, direction, or contributions. Third, the Subpoenas are not unduly burdensome because they are narrowly tailored to target information specific to FUSA's infringing sales and Fusion's role in that infringing activity. For these reasons and as set forth below, FUSA's Motion should be denied.

## II.    BACKGROUND

### A.    The Infringement Lawsuit

On April 28, 2022, XM filed the Infringement Lawsuit, alleging that Fusion infringes XM's U.S. Patent No. 11,298,166 (the "'166 Patent"). (Infringement Lawsuit, Dkt. No. 1.) The '166 Patent claims the invention of a bone fixation system that aids in treating and fixating deteriorated, damaged, and/or fractured bones, such as those in the hands and feet. Fusion infringes the '166 Patent via its sale of its IntraLock system. Fusion and XM conducted discovery in 2023 before the Infringement Lawsuit was ultimately stayed pending an *Inter Partes* Review of the '166 Patent. The Court lifted the stay on March 18, 2025 because Claim 11 of the '166 Patent survived the IPR.  Discovery is scheduled to close on August 29, 2025. (Infringement Lawsuit, Dkt. Nos. 119, 121, 126.)

### B.    The Relationship Between Fusion and FUSA

FUSA is an Arizona limited liability company that has, at the very least, significant overlap in management and personnel with Fusion. Adam Cundiff, Fusion's CEO and co-founder, who has testified on behalf of Fusion as a corporate witness in the Infringement Lawsuit, testified that he himself is affiliated with FUSA through "affiliated entities." (**Ex. 2** [Sept. 27, 2023 Deposition Transcript] at 82:13–18.) Mr. Cundiff further testified that Nathan Peterson, the founder of Fusion who was formerly affiliated with XM, is also affiliated with FUSA "through some entities." (*Id.* at 81:20–24.) The lead engineer at Fusion, Eli Jacobson, became the lead engineer at FUSA in or around 2023, (**Ex. 3** [Sept. 28, 2023 Deposition Transcript] at 19:22–24), and Ying Li, a former senior accountant at Fusion, is now also employed by FUSA. (*Id.* at 19:9–21.) Discovery might reveal that additional personnel and management overlap between the two companies.

FUSA and Fusion also have an established business relationship. Fusion's witnesses have testified that FUSA offers marketing services to Fusion, including digital marketing services. (**Ex. 2** at 85:23-25, 86:21-23.) FUSA also acts as a supplier of Fusion, supplying any product Fusion requests, including the IntraLock system. (**Ex. 3** at 21:2-17.)

**C.    The Sales Spreadsheet**

In the prior discovery period in 2023, Fusion produced a spreadsheet detailing its sales of the IntraLock system. The prior spreadsheet did not reflect any sales of the IntraLock system by FUSA. When discovery re-commenced in 2025, XM requested that Fusion produce an updated spreadsheet with sales for the years 2023 to the present, as such information is relevant to XM's calculation of its damages. In response, Fusion produced the updated Sales Spreadsheet, which showed, for the first time, that FUSA had made sales of the IntraLock system. In particular, the Sales Spreadsheet shows that FUSA started selling the IntraLock system in 2022, the year that XM initiated this lawsuit. The next year, in 2023, Fusion's sales of the IntraLock system ███████ ████████████████████████████████████████████████████████████ ███. FUSA, on the other hand, made ███████████████████████████████ sales of the IntraLock system in 2023, 2024, and 2025. (**Ex. 1**.)

**D.    Fusion Has Not Provided Adequate Discovery Concerning FUSA**

XM has previously attempted to take discovery from Fusion concerning both FUSA and Fusion's relationship with FUSA, largely to no avail. As referenced above, XM has taken two 30(b)(6) depositions of Fusion, but those depositions yielded little information as to FUSA itself. In 2023, Mr. Cundiff, Fusion's CEO and co-founder, denied, under oath, any legal relationship between FUSA and Fusion, and stated that he was unaware of who the majority owner of FUSA was. (**Ex. 2** at 80:22–81:4, 89:3-90:3.) Mr. Cundiff either denied knowledge or declined to answer many other questions about FUSA, including whether Fusion's Mr. Cundiff and Mr. Peterson were involved in founding FUSA (**Ex. 2** at 82:2-12), or whether FUSA sold products that targeted different markets than those sold by Fusion (*Id*. at 83:24-84:1). In 2025, Mr. Cundiff, as Fusion's corporate representative at a Rule 30(b)(6) deposition, refused to answer any questions concerning FUSA. (**Ex. 4** [June 26, 2025 Deposition Transcript] at 81:23-86:23.)

XM did not previously have any reason to suspect that FUSA too was infringing XM's patents by selling the IntraLock system. For example, Fusion's CEO testified in 2023 that FUSA's products did not compete with Fusion's products and that he did not know whether FUSA's

products targeted the same or different markets than Fusion's products. (**Ex. 2** at 83:12-84:1.) This led XM to believe that because Fusion was selling the IntraLock system, FUSA was not. However, XM now understands that this testimony was misleading because, as mentioned above, the Sales Spreadsheet reflects sales of IntraLock made not only by Fusion, but also by FUSA dating back to 2022, well before that Rule 30(b)(6) deposition of Fusion in 2023. With just a few months left in discovery in the Infringement Lawsuit, Fusion identified ██████████████████ infringing sales FUSA made after the initiation of the Infringement Lawsuit (which Fusion should have identified in its earlier discovery responses, years ago), and confirmed within the last few weeks that it intends to argue it is not liable for FUSA's sales. XM is entitled to explore those sales and how Fusion may have induced, directed, or otherwise contributed to them.

## III.    LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure allows a party to serve a subpoena on a non-party, requiring, among other things, the "attend[ance] and testi[mony]" of a witness and the production of "documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). FUSA moves to quash the Subpoenas pursuant to Federal Rule of Civil Procedure 45(d)(3). FUSA argues both that the Court is required to quash the Subpoenas due to an alleged undue burden on FUSA pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iv) and that the Court may quash the Subpoenas because they seek irrelevant information. As the moving party, FUSA bears the burden of proving, with evidence, that the Subpoenas would cause an undue burden. *In re Yassai*, 225 B.R. 478, 484 (Bankr. C.D. Cal. 1998) ("A party moving to quash on the grounds of undue burden pursuant to FRCP 45(c)(3)(A)(iv) bears the burden of proof"). "What constitutes an 'undue burden' is the same when a nonparty is subpoenaed under Rule 45 as when a party receives a request for production under Rule 34." *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 637 (D. Or. 2015) (citing *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012)).

Further, "[t]he test for 'relevance' in the context of a Rule 45 subpoena to a non-party, is no different than the test under Rules 26 and 34." *Wells Fargo Bank NA v. Wyo Tech Inv. Grp. LLC*, 385 F. Supp. 3d 863, 874 (D. Ariz. 2019). "Relevance has been construed broadly to

encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id*. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

## IV.    ARGUMENT

### A.    The Information Requested By the Subpoenas is Relevant and Necessary

FUSA contends that the information sought in the Subpoenas is irrelevant to XM's patent infringement claims. (Mot. at 4-6.) "The test for 'relevance' in the context of a Rule 45 subpoena to a non-party is no different than the test under Rules 26 and 34." *Wells Fargo Bank NA*, 385 F. Supp. 3d at 874. "Relevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id*.

Specifically, FUSA largely relies on its position as a third-party to state that it has "nothing to do with th[e] [Infringement] [L]itigation." (Mot. at 4.) But Fusion has put FUSA's sales of IntraLock directly at issue. While FUSA contends that information regarding FUSA's suppliers, customers, directors, officers, personnel, members, and organization are irrelevant, (Mot. at 5), this is wrong. All information sought in the Subpoenas is relevant to theories of liability by which XM will seek to demonstrate that Fusion is liable for FUSA's infringing sales.

As set forth, *supra*, with less than two months left in discovery, Fusion produced a spreadsheet that demonstrated for the first time that FUSA made ███████████ ███████ infringing sales of the IntraLock system. Given: (i) the timeline of drop-off in sales of IntraLock by Fusion from 2022 to 2023 and beyond, (ii) the contemporaneous beginning of sales by FUSA and increase in sales from 2022 to 2023 and beyond, (iii) that those sales trends coincide with the filing of the Infringement Lawsuit, and (iv) the overlap in personnel and the business relationship between FUSA and Fusion, it is a reasonable conclusion that Fusion offloaded its sale of the IntraLock system to FUSA in order to avoid liability for a significant portion of the

infringing sales. In light of the above facts, XM has good reason to believe that Fusion has influenced, directed, or contributed to FUSA's infringing sales. Accordingly, XM desires discovery to test various theories of liability for Fusion as to FUSA's infringing sales, which it is entitled to explore. The information sought in the Subpoenas is narrowly tailored to lead to evidence relevant to such theories.

For example, XM may seek to attribute FUSA's sale of accused products to Fusion via a theory of induced infringement, if discovery shows that to be a viable theory. 35 U.S.C. § 271(b) provides that whoever "actively induces infringement of a patent shall be liable as an infringer." "Although inducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement, it does not require that the induced party be an agent of the inducer or be acting under the inducer's direction or control to such an extent that the act of the induced party can be attributed to the inducer as a direct infringer." *XimpleWare, Inc. v. Versata Software, Inc.*, No. 13-cv-05161, 2014 WL 2080850, at *3 (N.D. Cal. May 16, 2014). "It is enough that the inducer causes, urges, encourages, or aids the infringing conduct and that the induced conduct is carried out." *Id*. A party is liable for induced infringement if it "took certain affirmative acts to bring about the commission by others of acts of infringement and had knowledge that the induced acts constitute patent infringement." *TecSec, Inc. v. Adobe Inc*., 978 F.3d 1278, 1286 (Fed. Cir. 2020) (citations and quotations omitted). "The intent standard focuses on . . . the defendant's subjective state of mind, whether actual knowledge or the subjective beliefs (coupled with action to avoid learning more) that characterizes willful blindness." *Id*. (citation omitted).

Here, Fusion may have offloaded its sales of the accused products to FUSA and enabled FUSA's ability to sell the accused products by, among other things: (i) providing advertising or marketing materials to FUSA in connection with the IntraLock system, (ii) providing information to FUSA concerning customers to whom the IntraLock system could be sold, (iii) providing information concerning the manufacture of the IntraLock system or information concerning manufacturers from whom FUSA to could purchase the IntraLock system, (iv) providing raw or other materials to FUSA in connection with the IntraLock system, (v) providing know-how,

supplies, or finished goods to FUSA in connection with the IntraLock system, or (vi) installing employees at FUSA with knowledge of the IntraLock system and sales thereof. XM accordingly requires discovery to determine whether Fusion took one or more of the above acts and thereby provided material support to FUSA's infringing sales. (*See* Dkt. 1-1 at 18-20, Document Requests 3, 4, 5, 7,8, 9, 10, Deposition Topics 3, 4, 5, 6, 7, 8, 10.) The information sought in those Requests and Topics is relevant to a theory of induced infringement. Further, to prove induced infringement, or any other theory of vicarious infringement, XM must show that FUSA committed an underlying infringing act. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) ("It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement"). Accordingly, XM requires information concerning FUSA's sale of the accused products to demonstrate that FUSA committed an underlying act of infringement for which Fusion may be held vicariously responsible. This information is therefore also relevant.

Further, XM could pursue a theory of direct infringement against Fusion based on FUSA's sales if evidence demonstrates that Fusion directed or controlled FUSA's infringing activities. "A party cannot avoid infringement . . . simply by contracting out steps of a patented process to another entity. In those cases, the party in control would be liable for direct infringement. It would be unfair indeed for the mastermind in such situations to escape liability." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007), *overruled on other grounds by Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012); *see also Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012), *rev'd on other grounds*, 572 U.S. 915 (2014) ("the court has recognized that direct infringement applies when the acts of infringement are committed by an agent of the accused infringer or a party acting pursuant to the accused infringer's direction or control").

Here, it is possible that Fusion instructed FUSA to begin selling IntraLock after the initiation of the Infringement Lawsuit for the benefit of Fusion, as evidenced by FUSA's reporting of its sales of IntraLock to Fusion. In support of this theory, XM seeks information concerning: (i) whether Fusion oversees or approves the marketing, advertisement, manufacture, acquisition, and/or offer for sale of IntraLock by FUSA, (ii) whether Fusion directed FUSA to sell IntraLock

and whether, absent that direction, FUSA would not have done so, (iii) whether Fusion installed employees at FUSA, including FUSA's lead engineer, to further FUSA's sale of IntraLock, (iv) whether FUSA regularly reports sales data concerning its sale of accused products to Fusion, and (v) any benefit, financial or otherwise, flowing to Fusion from FUSA's sale of IntraLock. (See Dkt. 1-1 at 18-20, Document Requests 4, 5, 6, 16, Deposition Topics 3, 7, 8, 9, 10, 11, 12.) This information is relevant because it could provide support for XM's theory that, as a result of the Infringement Lawsuit, Fusion directed FUSA to begin selling the IntraLock system to prevent Fusion from being liable for post-suit sales. This information is also relevant because it could also contribute to the furtherance of XM's induced infringement theory. *See e.g., Jacobs Vehicle Sys., Inc. v. Pac. Diesel Brake Co.*, 424 F. Supp. 2d 388, 393 (D. Conn. 2006) ("A parent company may be liable for inducing its subsidiary to commit patent infringement regardless of whether it is the subsidiary's alter ego") (citing *Insituform Techs., Inc. v. CAT Contracting, Inc*., 385 F.3d 1360, 1375 (Fed. Cir. 2004)).

Finally, XM may seek to demonstrate that Fusion is directly liable for FUSA's infringing activities by virtue of having legal control over FUSA. "A parent corporation cannot be held liable for the infringing actions of its subsidiary unless there is a substantial and continuing connection between the two with respect to the infringing acts." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc*., 886 F.2d 1545, 1553 (9th Cir. 1989). To demonstrate alter ego liability between two entities, a plaintiff must demonstrate "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *MMI, Inc. v. Baja, Inc*., 743 F. Supp. 2d 1101, 1111 (D. Ariz. 2010) (quoting *Doe v. Unocal Corp*., 248 F.3d 915, 926 (9th Cir. 2001)). Both prongs must be met.

In support of this theory, XM seeks evidence demonstrating that FUSA and Fusion are mere alter egos of one another, including information concerning: (i) whether FUSA and Fusion share management or other personnel, (ii) whether FUSA and Fusion share members and/or owners, (iii) whether FUSA and Fusion share logos or trademarks, (iv) whether FUSA or Fusion have similar bylaws, articles of incorporation, or other founding documents, (v) whether those

founding documents evidence a legal relationship between FUSA and Fusion, (vi) whether Fusion controls personnel decisions made by FUSA, (vii) whether FUSA and Fusion keep funds separate, and (viii) whether Fusion installed its employees at FUSA. (*See* Dkt. 1-1 at 18-20, Document Requests 2, 9, 10, 11, 12, 13, 14, 15, 17, 18, Deposition Topics 2, 13, 14, 15, 16, 17, 18.) Each of these requests is directly relevant to an alter ego or control theory by which Fusion would be liable for FUSA's infringing sales of the IntraLock system.

In sum, there are a variety of plausible theories pursuant to which XM may seek to hold Fusion liable for FUSA's sale of the IntraLock system and the Subpoenas seek information narrowly tailored to allow XM to prove one or more of them. Accordingly, each and every document request and deposition topic in the Subpoenas is relevant and necessary to prove at least one legal theory by which XM could seek to hold Fusion liable for FUSA's infringing sales of the IntraLock system. FUSA's arguments that the Subpoenas seek irrelevant information are therefore unpersuasive.

## B.    The Information Sought in the Subpoenas is Not Readily Available From Other Sources

FUSA next contends that the information sought in the Subpoenas is "equally or more readily obtainable from public sources and/or a party involved in the underlying litigation, but only identifies a single document request and deposition topic that is allegedly objectionable for this reason.[3] (Mot. at 6-7.)

More generally speaking, FUSA is incorrect that the information sought in the Subpoenas is equally or more readily obtainable from other sources. For example, XM seeks information concerning FUSA's decision to sell the accused products and information concerning how Fusion's influence over FUSA's decision to sell, market, advertise, or produce the accused products. FUSA does not explain how Fusion, as opposed to FUSA, would have that information. FUSA also does not explain how Fusion would possess information concerning FUSA's internal

---

[3] If the Court agrees with Fusion on this point, XM submits that only that document request and deposition topic should be stricken from the subpoenas.

management, FUSA's finances, FUSA's founding documents, or FUSA's customers and manufacturers who buy and supply the IntraLock system sold by FUSA. In fact, there is no reason to believe that Fusion would possess any of that information because all such information concerns the internal management and decision-making of FUSA.

Further, while some requests or topics might seek information that overlaps with information obtainable from Fusion, such as "documents related to Fusion's involvement in [FUSA's] sale . . . of the Accused Products," FUSA is likely to possess internal documents or information on that topic that Fusion would not have access to. Fusion is only one-half of the relationship between FUSA and Fusion, and is therefore unlikely to possess all relevant information, particularly when a large portion of the information that XM seeks relates to the *impact* Fusion's actions had *on* FUSA.

FUSA then inexplicably claims that the information is more readily obtainable from other sources because XM should have sought the information requested in the Subpoenas sooner in this litigation or, alternatively, from Fusion in a deposition where Fusion purportedly agreed to testify about "any purported relationship between Fusion and FUSA." (Mot. at 7.) Both assertions are incorrect. First, as laid out above, XM only learned of FUSA's sales of the IntraLock system upon Fusion's production of an updated Sales Spreadsheet, which occurred on June 4, 2025, just a couple of months ago even though the Infringement Lawsuit has been going on for years. XM previously had no reason to believe that FUSA was selling the IntraLock system, especially given the testimony of Fusion's CEO that he was not aware of FUSA selling products that competed with Fusion's products. (**Ex. 2** at 83:12-14.) Accordingly, XM did not unreasonably delay in seeking this information. Further, FUSA's assertion that XM is seeking a "third and fourth bite at the apple from third party FUSA" is incorrect. (Mot. at 7.) In support of that assertion, FUSA cites XM's purported questioning of Fusion on its relationship with FUSA, but ignores, as set forth *supra*, Section II(d), that: (1) Fusion's testimony concerning FUSA was largely non-responsive, (2) Fusion flatly refused to discuss FUSA at its last deposition, and, finally, (3) that much of the information discussed above is not likely available from Fusion because it is information concerning the internal management and decision-making of FUSA. Accordingly, XM cannot

obtain the information it seeks from the Subpoenas from other sources and this is not grounds to quash the Subpoenas.

### C.    The Subpoenas Are Not Unduly Burdensome

FUSA's final, catch-all argument is that the Subpoenas place an undue burden on FUSA. FUSA's undue burden arguments largely parrot its arguments concerning relevance and XM's alleged ability to obtain that information from other sources. (Mot. at 7-8.) Those arguments are unpersuasive for the reasons set forth above. FUSA also argues that the subpoenas are burdensome because they require production of confidential information. (Mot. at 8.) But confidentiality is not a reason to withhold relevant information, especially where, as here, there is a protective order in place protecting confidential information. Rather, "the resolution of a privacy objection requires a balancing of the need for the particular information against the claimed privacy right." *Toranto v. Jaffurs*, No. 16-cv-1709, 2018 WL 9537310, at *3 (S.D. Cal. Nov. 29, 2018). In resolving this balancing test, courts consider whether the material sought is "clearly relevant" and whether "the need for discovery is compelling because the information sought is not otherwise readily obtainable." *Id.* As set forth herein, the information sought by the Subpoenas here is clearly relevant and is necessary because XM cannot obtain information concerning FUSA's sale of the IntraLock system from any other source. Moreover, because there is a protective order in place in the Infringement Lawsuit, "there is minimal encroachment of the privacy right because any sensitive information can be labeled 'Confidential.'" *Id.*; Infringement Lawsuit, Dkt. No. 62 (permitting a producing party to label protected or private information "Confidential" and trade secret or equivalent information "Highly Confidential – Attorneys' Eyes Only").

The only specific example of undue burden FUSA asserts is XM's request concerning FUSA's bank accounts. (Mot. at 8.) FUSA cites no authority for the proposition that a request for information about FUSA's bank accounts is unduly burdensome.  It is a strange argument; most companies have their bank account information at their fingertips.  Moreover, is incorrect that "neither party to the litigation has sought actual bank records from the other side," (Mot. at 8.), as XM has sought information from Fusion concerning its bank accounts as well, to firm up whether FUSA and Fusion are operating as alter egos of one another.

FUSA fails entirely to carry its burden to demonstrate undue burden. FUSA presents no evidence, other than conclusory statements, as to why the information sought would place an undue burden on FUSA. "A party moving to quash on the grounds of undue burden pursuant to FRCP 45(c)(3)(A)(iv) bears the burden of proof." *In re Yassai*, 225 B.R. 478, 484 (Bankr. C.D. Cal. 1998) (denying motion for protective order where movant "presented no evidence pertaining to the time, cost, or inconvenience entailed in responding to the Third-Party Subpoenas"). Other than reiterating arguments about relevance, FUSA presents no actual evidence of undue burden. FUSA's undue burden argument should be rejected for this reason alone.

Instead, FUSA provides only hyperbolic examples of information that is allegedly unduly burdensome to provide, such as information about its bank accounts, its members and/or owners, its hiring policies, and its customers and suppliers. *See* Dkt. 1-1 at 18-20, Document Requests 7, 8, 10, 11, 13, 15, Deposition Topics 5, 6, 15, 16, 17.) But as set forth above, all of the information sought in the Subpoenas is relevant and necessary to demonstrate Fusion's liability for FUSA's infringing sales of the IntraLock system. With regard to the examples cited by FUSA (Mot. at 8), XM requires information concerning FUSA's personnel policies because prior discovery suggests that Fusion may have installed its employees at FUSA to aid FUSA's sale of the IntraLock system. XM requires FUSA's customer and supplier lists because it is likely that Fusion provided those lists to FUSA to enable FUSA's infringing sales of the IntraLock system. Finally, XM requires information about both FUSA and Fusion's bank accounts because the overlap in personnel and sharing of sales data suggests that Fusion and FUSA may be acting as mere alter egos of one another.

In other words, FUSA will not be unduly burdened by the Subpoenas because the Subpoenas seek targeted sets of information regarding theories of liability by which Fusion can be held responsible for FUSA's infringing sales of the IntraLock system. The law is also clear that FUSA bears the burden of presenting evidence of undue burden, which it has failed to do. Accordingly, FUSA's Motion should be denied.

**D.   FUSA Failed to Comply With This Court's Local Rules and Procedures**

FUSA's Motion must also be denied for the independent reason that FUSA failed to

comply with this Court's pre-motion procedures for discovery motions. Local Rule 7.2(j) states that "[n]o discovery motion will be considered or decided unless a statement of moving counsel is attached thereto certifying that after personal consultation and sincere efforts to do so, counsel have been unable to satisfactorily resolve the matter." As noted in footnote 1, *supra*, FUSA did not meet and confer with XM prior to the filing of this Motion, and FUSA does not even purport to attach a statement or certification to its Motion stating that it had done so. (*See generally* Dkt. 1.) Accordingly, FUSA's Motion should be denied for failure to comply with the Court's local rules. *See* Local R. 7.2(j) ("Any discovery motion brought before the Court without prior personal consultation with the other party and a sincere effort to resolve the matter, may result in sanctions"); *Hamilton v. Yavapai Cmty. Coll. Dist.*, No. 12-cv-08193, 2014 WL 11515631, at \*14 (D. Ariz. Sept. 9, 2014) (denying discovery motion where moving party's counsel failed to comply with the meet and confer requirement prior to filing the motion).

## V.    CONCLUSION

For the foregoing reasons, FUSA's Motion to Quash XM's Subpoena Duces Tecum and Subpoena to Testify should be denied, and the Court should order FUSA to comply with both Subpoenas within the period remaining for discovery in the Infringement Lawsuit.

- 14 -

DATED: August 15, 2025

By:  */s/ Michael J. Zinna*

**KELLEY DRYE & WARREN LLP**
Michael J. Zinna (admitted *pro hac vice*)
Abhishek Bapna (admitted *pro hac vice*)
mzinna@kelleydrye.com
abapna@kelleydrye.com
One Jefferson Road
Parsippany, NJ 07054
Telephone: (973) 503-5964

**FENNEMORE CRAIG, P.C.**
William G. Klain
Zachary W. Rosenberg
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
(602) 916-5000
wklain@fennemorelaw.com
zrosenberg@fennemorelaw.com

*Attorneys for Plaintiff Extremity Medical, LLC*

- 15 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day a true and correct copy of the foregoing document was served via email on all counsel of record.


Dated: August 15, 2025                     By: */s/ Michael J. Zinna*
                                                Michael J. Zinna