**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Extremity Medical LLC, | No. MC-25-00031-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Fusion Orthopedics LLC, | |
| Defendant. | |

Pending before the Court is Fusion Orthopedics USA, LLC's ("FUSA") Motion to Quash (Doc. 1) Extremity Medical, LLC's ("Extremity") Subpoena to Produce Documents and Subpoena to Testify (the "Subpoenas") (Doc. 1-1 at 1-20).  For the reasons discussed below, FUSA's non-party motion to quash is granted in part and denied in part.

**BACKGROUND**

In 2022, Extremity sued Fusion Orthopedics, LLC ("Fusion"),[1] alleging patent infringement against Fusion for one of Fusion's products—the IntraLock system. *Extremity Med. LLC v. Fusion Orthopedics, LLC*, No. 2:22-cv-00723 (D. Ariz. 2022) [hereinafter the "Infringement Action"].[2]  In the Infringement Action, Extremity alleges that Nathan Peterson, its employee from 2011-2019, founded Fusion in 2014 "while also actively selling Extremity . . . products in the same market space, at the same time." (IA 1

---

[1] As will be discussed below, the parties dispute the legal relationship between Fusion and FUSA.
[2] Citations to the Infringement Action's docket will be formatted as follows: (IA [ECF No.] at [page number]).

at 4). On August 30, 2019, Extremity put Fusion on notice of Extremity's patents and stated that Extremity had been informed that "Fusion was using Extremity . . . products as models for its own products" and likely working with other individuals, including those with a past or existing relationship with Extremity, to duplicate Extremity's products. (*Id.* at 4-5). Extremity sent Fusion another, similar letter on November 23, 2021, providing notice of Extremity's other patents, before filing its Complaint on April 28, 2022. (*Id.* at 5).

After the initiation of the Infringement Action, Fusion slowed and eventually stopped selling the IntraLock system. (Doc. 6 at 5, 10). Around the same time, FUSA—a company with a staff including former Fusion personnel[3] that markets and supplies products for Fusion—began selling the IntraLock system. (*Id.* at 5-8).

Extremity was unaware of FUSA's IntraLock sales until June 2025—approximately a month before the discovery deadline in the Infringement Suit[4]—when Fusion produced a sales spreadsheet showing FUSA sales beginning in 2022 and continuing through 2025 (the "2025 Spreadsheet"). (*Id.* at 5-6). An earlier version of the sales spreadsheet, produced in 2023, did not reflect any of FUSA's sales (the "2023 Spreadsheet").[5] (*Id.* at 8).

Throughout discovery, Extremity sought information from Fusion about FUSA and its relationship with FUSA. (*Id.* at 8). When asked about FUSA during a Rule 30(b)(6) deposition, Adam Cundiff, Fusion's CEO and co-founder, stated that FUSA and Fusion did not sell competing products. (*Id.* at 8-9). In a subsequent deposition and at other times during discovery, Fusion denied knowledge of a legal relationship with FUSA and declined to answer questions about FUSA. (*Id.* at 8).

Once it received the 2025 Spreadsheet, Extremity decided to seek information about

---

[3] FUSA employs a former lead engineer and a former senior accountant from Fusion. (Doc. 6 at 7).
[4] The discovery deadline was July 25, 2025, until the Court extended it to August 29, 2025. (Doc. 6 at 5 n.2).
[5] FUSA claims that Extremity had knowledge of its IntraLock sales "for more than two years" before the 2025 Spreadsheet was produced. (Doc. 12 at 2). But it neither provides evidence nor cites to anything from the Infringement Action record to support this assertion. (*See id.*).

- 2 -

FUSA through the Subpoenas. (Doc. 1-1 at 1-20). Extremity's requests concern "(i) how Fusion may have contributed to FUSA's sales of the IntraLock system, (ii) how Fusion may have controlled, directed, or otherwise influenced FUSA's sales of the IntraLock system, and (iii) the legal relationship between Fusion and FUSA." (Doc. 6 at 6). It argues that the information is "necessary to prove Fusion's liability for FUSA's infringing sales of the IntraLock system." (*Id.*).

FUSA responded to the Subpoenas with the instant Motion to Quash. (Doc. 1).

**DISCUSSION**

**I.       Legal Standard**

Federal Rule of Civil Procedure 45 allows the district court in which an action is pending to issue a subpoena commanding a nonparty "to attend and testify" at a deposition and to "produce designated documents, electronically stored information, or tangible things in that [nonparty]'s possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). The nonparty may respond with written objections, including assertions of privilege. Fed. R. Civ. P. 45(d)(2)(B), (e). The nonparty may also object by filing a motion to quash or modify a subpoena.[6] Fed. R. Civ. P. 45(d)(3).

On such a motion, "the court for the district where compliance is required" has the power to quash or modify a subpoena. *Id.* As relevant here, the court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45 (d)(3)(A)(iv). While "[t]he moving party bears the burden of persuasion on a motion to quash, . . . the party issuing the subpoena must demonstrate that the discovery is relevant." *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corp.*, 337 F.R.D. 639, 645 (N.D. Cal. 2020); *Pravati Cap. LLC v. Moore*, No. CV-24-02119, 2024 WL 4299400, at

---

[6] Extremity argues that FUSA's motion should be denied because FUSA did not comply with Local Rule 7.2(j), which requires parties in discovery disputes to engage in personal consultation in a sincere effort to resolve the issue and to file a certification of such consultation before the Court will consider or decide any discovery motion. (Doc. 6 at 6, 17-18). Courts in this District have not, however, applied this rule to non-parties seeking to quash non-party subpoenas. *E.g.*, *Walker v. AUI Ins. Co.*, No. CV-23-01641, 2024 WL 4607473, at *2 (D. Ariz. Oct. 29, 2024); *Games2U, Inc. v. Game Truck Licensing*, No. MC-13-00053, 2013 WL 4046655, at *1 (D. Ariz. Aug. 9, 2013). As such, FUSA was not required to meet-and-confer with Extremity prior to filing its motion.

*1 (D. Ariz. 2024).

"The test for 'relevance,' in the context of a Rule 45 subpoena to a non-party, is no different than the test under Rules 26 and 34." *Wells Fargo Bank NA v. Wyo Tech Inv. Grp. LLC*, 385 F. Supp. 3d 863, 873 (D. Ariz. 2019). Rule 26(b) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance, though generally broadly construed, is limited by the proportionality of the discovery sought to the needs of the case. *Id*. Proportionality depends on "the importance of the issues . . . , the amount in controversy, . . . relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The scope of discovery may be further limited if the Court "determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

Moreover, when weighing a non-party's burden "against the value of the information to the serving party," the Court should "afford . . . special consideration" to the non-party by considering relevance, proportionality, "the need of the party for the documents, the breadth of the document request, the time period covered by it, [and] the particularity with which the documents are described." *Aquastar Pool Prods. Inc. v. Paramount Pool & Spa Sys.*, No. CV-19-00257, 2019 WL 250429, at *3 (D. Ariz. Jan. 17, 2019) (quoting *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 504 (E.D. Cal. 2012)). The party claiming that discovery is unduly burdensome must "allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016) (citation omitted).

## II.    Analysis

In support of its Subpoenas, Extremity claims that the information it seeks from FUSA is relevant and necessary to its three theories of Fusion's liability for direct

infringement and induced infringement by vendors, customers, and others. (Doc. 6 at 6); *cf.* (IA 1 at 6-7). As pled in the Infringement Action, Extremity's theories are that Fusion (1) induced FUSA to infringe on Extremity's patent (the "Induced Infringement Theory"); (2) directly infringed on the patent by controlling and direction FUSA's infringing activity (the "Agency Theory"); and (3) directly infringed on the patent by acting through FUSA as its alter ego (the "Alter Ego Theory"). (Doc. 6 at 6).

Under the Induced Infringement Theory, Extremity can establish that Fusion is vicariously "liable as an infringer" if it can show that Fusion actively induced FUSA's infringement. 35 U.S.C. § 271(b). Showing induced infringement would require Extremity to present evidence that Fusion knowingly induced patent infringement with the specific intent to cause, urge, encourage, or aid the infringing conduct, and that FUSA carried out the infringing conduct. *Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, 609 F.3d 1308, 1315 (Fed. Cir. 2010) (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006)).

In contrast, the Agency Theory and the Alter Ego Theories are theories of direct liability. Under the Agency Theory, Extremity must show that FUSA engaged in infringing conduct as the agent, or under the direction or control of," Fusion. *Limelight Networks, Inc. v. Akami Techs., Inc.*, 572 U.S. 915, 920 (2014) (citing *Akami Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (9th Cir. 2012), *overruled on other grounds* by 572 U.S. 915). Under the Alter Ego Theory, Extremity must show (1) that Fusion and FUSA have "such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017). Thus, to prove direct infringement under either the Agency or Alter Ego Theory, Extremity must offer evidence of the extent of the relationship between Fusion and FUSA.

As an initial matter, the Court will not require FUSA to comply with Extremity's requests for "[a]ll documents" and "[a]ny communications related to" the Infringement

- 5 -

Action (Doc. Req. 1; Depo Req. 1)[7] or for information about "any past or present relationship between [FUSA] and Fusion" (Doc. Req. 2; Depo. Req. 2) because those requests are facially overbroad—i.e., not proportionate to the needs of the case. Indeed, Extremity does not argue that these requests are relevant to a particular claim or theory. (*See* Doc. 6 at 10-14).

As for Extremity's remaining requests, each is relevant, at least in part, to one of Extremity's theories of liability. The requests can be divided into four categories, seeking information related to FUSA's (1) IntraLock sales (Doc. Reqs. 3, 4, 5, 6, 7, 8, 16; Depo. Reqs. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12); (2) personnel and hiring decisions (Doc. Reqs. 9, 10, 15; Depo. Reqs. 13, 14); (3) general business relationship with Fusion (Doc. Reqs. 12, 17, 18); and (4) formation, founding documents, and owners/members (Doc. Reqs. 11, 13, 14; Depo. Req. 15, 16, 17, 18). While each category seeks information that is relevant to the Infringement Action, some of Extremity's requests are likely to capture irrelevant information. For the reasons provided below, the Court will modify the Subpoenas as necessary to better reflect the needs of the case. Further, the Court finds that, as modified, the Subpoenas place no undue burden on FUSA.

### A.    Relevance

Though relevance and proportionality depend on a multitude of factors, including "the importance of the issues . . . , the amount in controversy, . . . relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(1), Extremity and FUSA provide no argument as to the amount in controversy or their relative access to relevant information. (*See* Docs. 1, 6, 12).

Moreover, FUSA makes no argument as to the importance of the Induced Infringement, Agency, or Alter Ego Theories, or to the importance of discovery in resolving those issues. Indeed, FUSA only makes the conclusory assertion that Extremity's

---

[7] Document requests will be cited as: ("Doc. Req. #"), while Rule 30(b0(6) deposition topic request will be cited as: ("Depo. Req. #). All such citations refer to the text of the Subpoenas (Doc. 1-1 at 18-20).

Subpoenas could *only* be relevant to FUSA's "successor liability" for Fusion's infringement. (Doc. 1 at 5; Doc. 12 at 2, 4). Because Extremity has not alleged a successor liability claim against FUSA, FUSA argues that the Subpoenas are entirely irrelevant to Extremity's claims in the Infringement Action because there is "no reason" and "no basis" for Extremity to seek this information without such a claim. (Doc. 12 at 2-5). In doing so, FUSA makes no meaningful argument as to the relevance of the Subpoenas' requests to Extremity's theories of Fusion's liability. (*See id.*). As such, the Court's relevance inquiry will focus on Extremity's arguments regarding the importance of issues and importance of discovery to resolving those issues.[8]

### 1.    IntraLock Sales

The requests in this category are relevant and proportional to the needs of the case. Within this category, Extremity seeks information about FUSA's IntraLock sales, beginning with FUSA's decision to sell the IntraLock system (Doc. Req. 4; Depo Req. 3, 9), FUSA's suppliers and customers for the system (Doc. Reqs. 7, 8; Depo. Reqs. 5, 6), and Fusion's role in those sales. (Doc. Reqs. 3, 4, 5, 6, 7, 8, 16; Depo. Reqs. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12). Specifically, Extremity seeks discovery of documents and communications concerning Fusion's involvement in or approval of FUSA's marketing, advertising, manufacturing, acquisition, or sales of the IntraLock system (Doc. Reqs. 3, 5, 16; Depo. Reqs. 4, 7, 9), FUSA's reports to Fusion about IntraLock sales (Depo. Reqs. 8, 12), and any transactions between FUSA and Fusion involving payments, benefits, materials, services, marketing, finished goods, royalties, advertising, etc. related to FUSA's IntraLock Sales (Doc. Req. 6; Depo. Reqs. 7, 10, 11).

Under the Induced Infringement Theory, this discovery is necessary and relevant to determine the genesis of FUSA's infringing conduct—i.e., whether FUSA decided to sell the IntraLock system itself or whether Fusion induced it to do so—and Fusion's potential involvement in the IntraLock sales over time. (Doc. Req. 4; Depo. Reqs. 3, 9). Discovery

---

[8] Though undue burden is also a factor of relevance, Fed. R. Civ. P. 26(b), FUSA bears the burden of persuasion on this factor, *Rule 45 Subpoenas*, 337 F.R.D. at 645, and its arguments are again conclusory with little impact on the Court's relevance analysis. As such, FUSA's undue burden arguments are addressed separately in subsection II.B, *infra*.

regarding Fusion's contributions to FUSA's allegedly infringing conduct would assist a fact finder in determining the extent of Fusion's influence over FUSA's IntraLock sales. Indeed, evidence of Fusion's potential role in supplying finished products, connecting FUSA with suppliers, and providing FUSA a list of IntraLock customers and marketing materials to target said customers would aid a determination of whether Fusion induced FUSA's sales, directed and controlled FUSA as its agent, or operated FUSA as its alter ego. Similarly, communications and transactions between FUSA and Fusions, including any reports, payments, or benefits passed from FUSA to Fusion, would help assess Fusion's knowledge of and degree of control over FUSA's allegedly infringing conduct.

In sum, Extremity's Subpoena requests in this category seek necessary information and are well tailored to specifically target evidence that directly informs the allegedly infringing conduct involving the IntraLock system. As such, FUSA must comply with Extremity's requests in this category as written (Doc. Reqs. 3, 4, 5, 6, 7, 8, 16; Depo. Reqs. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12).

### 2.    Personnel & Hiring

The second category of Subpoena requests does seek relevant information, but Extremity has not shown that the extent of information sought is proportional to the needs of the case.

Within this category, Extremity seeks identifying information, documentation, and communications involving "any employees who are employed or have been employed by both FUSA and Fusion," including payroll and personnel decisions, and any discovery pertaining to Fusion's influence on those decisions. (Doc. Reqs. 9, 10, 15; Depo. Reqs. 13, 14). Extremity further seeks "organizational charts of FUSA and Fusion," and specifically mentions "officers, directors, [and] managers" but seeks information about all employees and other personnel. (Doc. Reqs. 9, 10).

The Court agrees with Extremity that Fusion's potential "install[ation] of employees at FUSA with knowledge of the IntraLock system and sales thereof" and control of hiring decisions are relevant to assessing Fusion's degree of control across Extremity's three

theories of liability.  (Doc. 6 at 12-14).  Extremity has not shown, however, that it needs to know the identity of all employees who have worked for both FUSA and Fusion in *any* role at *any* point in time.  The Court will limit the Subpoena requests to the period of August 2019 (when Fusion received notice of its alleged infringement from Extremity) through the present.  The Court will further limit the Subpoena requests to cover only those employees or personnel in positions of leadership—such as officers, directors, and managers—or who are or have been involved with the IntraLock system at any stage (i.e., deciding to sell, identifying suppliers and customers, manufacturing, marketing, advertising, reporting sales, etc.).

Extremity has not shown any need for information beyond these limitations, which narrow the scope of discovery to those individuals who (a) have some degree of power or control within FUSA; (b) have some knowledge of the infringing conduct that occurred after Fusion's receipt of Extremity's 2019 notice; or (c) carried out the infringing conduct thereafter.  If Fusion did indeed "offload its sales of the IntraLock system to FUSA in order to avoid liability for a significant portion of the infringing sales" (Doc. 6 at 10-11), this modified scope for Extremity's Subpoena requests will allow Extremity to access the necessary information without exceeding its needs in the Infringement Action.  FUSA must comply with the Subpoena requests in this category as modified above (Doc. Reqs. 9, 10, 15; Depo. Reqs. 13, 14).

### 3. General Business Relationship

The third category of Subpoena requests similarly seeks relevant information.  But, again, Extremity has not shown that the extent of information sought is proportional to the needs of the case.

Within this category, Extremity seeks "all documents and communications" concerning (a) "the exchange of any services, materials, supplies, and/or finished goods between Fusion and" FUSA, (b) FUSA's "use of any of Fusion's logos, trademarks, and/or marketing materials," and (c) Fusion's "use of any of [FUSA's] logos, trademarks, and/or marketing materials."  (Doc. Reqs. 12, 17, 18).  The Court agrees with Extremity that these

inquiries are relevant to the degree of control exerted by Fusion over FUSA—i.e., whether FUSA provided such services, materials, supplies, goods, and branding to aid FUSA's IntraLock sales, whether FUSA acts merely at the direction and control of Fusion, or whether FUSA and Fusion cannot justly be treated as distinct entities. (Doc. 6 at 10-12).

But, as with the second category, the Court will limit these Subpoena requests temporally and topically. First, FUSA need only respond to these requests with information from August 2019 through the present. Second, FUSA need only provide information related to the IntraLock system. Extremity has not shown that information about the entities' exchange of services, trademarks, marketing materials, supplies, etc. related to systems or products other than IntraLock would be proportional to assessing Fusion's liability for the alleged infringement of the IntraLock system—though such exchange may have some relevance to the parties' relationship, any probative value is minimal. As such, FUSA must comply with the Subpoena requests in this category but only to the extent described here (Doc. Reqs. 12, 17, 18).

### 4.      Formation, Founding Documents, & Owners/Members

The requests in this category are relevant and proportional, particularly to Extremity's Agency and Alter Ego Theories, which depend on the closeness of the relationship between Fusion and FUSA.

Within this category, Extremity seeks (a) information about the owners/members of FUSA, including any entity-owners and the owners of those entities, with particular interest in any owners/members who are also owners/members of Fusion (Doc. Req. 11; Depo. Reqs. 15, 16); (b) identifying documents for any of FUSA's bank accounts that are jointly owned or belong to Fusion (Doc. Req. 13; Depo. Req. 17); and (c) documents associated with the founding of FUSA and formation of its LLC, such as "articles of incorporation, bylaws, charters, member agreements," etc. (Doc. Req. 14; Depo. Req. 18). Knowing whether the owners/members control both FUSA and Fusion, whether the two entities share funds, and whether FUSA's formation was influenced by Fusion, are all relevant inquiries for assessing the closeness of the entities' relationship. In other words, discovery

under this category is likely to produce evidence of whether Fusion was directing and controlling FUSA, *Limelight*, 572 U.S. at 920, or whether Fusion and FUSA have "such unity of interest and ownership" that they cannot justly be considered distinct entities. *Williams*, 851 F.3d at 1021.

Moreover, the requests in this category are proportional to the needs of the case. As an initial matter, Extremity's request about financial information has been tailored to seek only information about accounts shared by FUSA and Fusion. While Extremity's request for information about owners/members and founding documents may appear broad, the intent of these requests is to discover what FUSA and Fusion have in common. Obtaining this information from FUSA would not only allow Extremity to assess the degree of commonality between the entities, but to assess the completeness of disclosures from both FUSA and Fusion.

As such, FUSA must comply with the Subpoena requests in this category as written (Doc. Reqs. 11, 13, 14; Depo. Reqs. 15, 16, 17, 18).

### B.    Undue Burden

FUSA fails to show that it would be forced to bear any undue burden in complying with the Subpoenas, particularly as modified above. As noted, a moving party that claims discovery is unduly burdensome must "allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence." *Nationstar*, 316 F.R.D. at 334 (citation omitted). FUSA has made no such allegations. (*See* Doc. 1 at 6-8; Doc. 12). Indeed, FUSA makes only the conclusory statement that it would be "extremely burdensome for" it "to search for, analyze, collect, and produce" the information that Extremity seeks, listing the types of requests without characterizing what efforts or costs compliance would require. (Doc. 1 at 8).

Further, though FUSA argues that any burden would be undue because some of the discovery sought is available from Fusion, it overstates that availability, overlooking Fusion's delayed disclosure of FUSA's IntraLock sales and Fusion's non-responsiveness during discovery in the Infringement Action. (Doc. 1 at 4, 6-7; Doc. 6 at 14-16; Doc. 12

at 2). Extremity did not previously seek discovery related to FUSA's sales because it only learned of those sales in June 2025. (Doc. 6 at 15). Moreover, though Extremity "had the opportunity to ask questions about any relationship" and "any transactions" between FUSA and Fusion during two Rule 30(b)(6) depositions (Doc. 12 at 2), Extremity points to those portions of the depositions, showing that the deponent testified in 2023 that FUSA did not sell products competing with Fusion's in the market and later, in 2025, refused to discuss FUSA. (Doc. 6 at 8-9, 15). As illustrated by the 2025 Spreadsheet later produced by Fusion, FUSA was in fact selling Fusion's IntraLock system at the time of the 2023 deposition. (*Id.* at 8-9). Though FUSA's objection reflects courts' reluctance to require nonparties to produce documents or information that can be produced by a party, *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014), Extremity has shown that it attempted to obtain discovery from Fusion about FUSA. (Doc. 6 at 14-16). As such, Extremity is entitled to seek additional evidence or identify omissions, particularly because FUSA has not demonstrated that it would suffer any undue burden by complying with the subpoena. *Viacom Int'l Inc. v YouTube, Inc.*, No. 08-80129, 2008 WL 3876142, at *3-4 (N.D. Cal. Aug. 18, 2008) (citation omitted).

FUSA further argues that any burden would be undue because Extremity seeks "information that is equally or more readily obtainable from public sources." (Doc. 1 at 6). FUSA does not, however, identify which requests it objects to on this basis. (*See id.*). This conclusory, non-specific objection does not support a finding that FUSA would be unduly burdened by any of the requests. *Nationstar*, 316 F.R.D. at 334.

Finally, to the extent that FUSA is concerned about the confidentiality of certain documents and information (*see* Doc. 1 at 5, 8), the protective order in place in the Infringement Action explicitly states that its provisions are applicable to any non-party's confidential information. (IA 62 at 16-17). Though the protective order does not prevent non-parties from seeking additional protection, (*id.*), FUSA has not addressed the existence of the protective order and has not explained why its confidential information would not be adequately protected by the order.

In sum, FUSA has failed to provide any specific facts to characterize the volume of discovery, the difficulty that it may face in complying with the Subpoenas, or the costs of any such compliance. *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 98 (D. Ariz. 2022). It has thus failed to meet its burden of establishing an undue burden that would outweigh the value of the sought information to Extremity. *Soto*, 282 F.R.D. at 504; *Nationstar*, 316 F.R.D. at 334.

## CONCLUSION

Accordingly, FUSA must comply with the Subpoena requests as modified above because it has not made the showing of undue burden that would require the Court to quash the Subpoenas.

The Court nonetheless wishes to avoid duplicative discovery. Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 45(d)(1). On August 27, 2025, after FUSA and Extremity had filed their briefs regarding the Subpoenas at issue, the Court resolved an informal discovery dispute between Fusion and Extremity in the Infringement Action, requiring Fusion to provide Extremity with "the materials relating to information shared with FUSA including advertising, logos, trademarks, customer lists, employees, and manufacturing information." (IA 129). In light of this resolution, while FUSA must promptly comply with the Subpoenas as modified, FUSA need not produce information that is duplicative of Fusion's productions in the Infringement Action or that is readily publicly available. However, because the Court has found that such duplication and costs would not be undue, any disputes that arise regarding FUSA's compliance with the Subpoenas are to be resolved in favor of Extremity to allow it to verify the completeness of Fusion's discovery responses in the Infringement Action.

Accordingly,

**IT IS ORDERED** that FUSA's Motion to Quash (Doc. 1) is **GRANTED in part** and **DENIED in part**.

/ / /

/ / /

- 13 -

**IT IS FURTHER ORDERED** that FUSA comply with the Subpoenas as modified pursuant to this order within thirty (30) days of the date of this order.

Dated this 3rd day of June, 2026.

_____
G. Murray Snow
Senior United States District Judge